Trezevant,
charging the jury, laid it down as law, that a power, or control, over property, is equivalent to actual possession, to entitle a party to claim as creditor in possession under the attachment act; and that it was clear, from the evidence, that the defendants had a power over the property in question, to dispose of it, or order concerning it, the captain being subject to their control and direction. He also laid it down, that attachments dqnot bind property, or create a prior lien, as between creditors, by the lodgment of the writ, but only from the service of the writ, as directed by the attachment act.
The jury found a verdict for the defendants.
The motion was founded on the supposed misdirection of the judge, and was argued by Cheves, for the plaintiffs, and Pringle, for the defendants.
Cheves. Defendants had no power, but as agents, to dispose of the property when delivered up to them. The property never was actually, and completely, delivered. At the time of attaching, the property was in the actual possession of the captain. If the defendants had any possession, it was only a concurrent possession with the captain. The captain had agreed to conform to the defendants direction; but he revoked the submission he had given, and by bis first return held as sole possession, and as a creditor set up a claim to satisfaction out of the property. The claim, on the principle of a pre-existing lien, is not founded, unless the claimant has actual possession of the thing to which the lien attaches. 1 East. 64. 3 D. and E. 119. Where there is only a constructive possession, no lien can attach. Where two have an equal right to satisfaction out of properly, the right of him who happens to have the actual possession of the property, must be preferred, — 4 East. 211, though possession be illegally acquired. Between principal and factor, consignor, and consignee, there can be no lien, unless the claimant has actual possession. What shall be considered actual possession, must depend on the same principles and doctrine which apply in questions relative to stoppage in transitu. - If goods be consigned, and the consignee becomes bankrupt, the owner may countermand the consign- *504 men!; before delivery; and actual delivery to the consigned can only put an end to the transit; and a delivery to a car* rier does not vest the property in the consignee. 3 D. and E. , 406. See Abbott, 302-3. Taction, or corporal touch, is not ne- . r . . cessary to obtain actual possession, but some act of delivery is in-dispensible to transfer the possession. In this case there was no sufficient act of delivery to the defendants, to vest the possession in them. The captain’s possession was never divested, and his possession was the possession of the owner ; and being in actual pos. session) he had a right to revoke his submission promised to the de. fendants’ order. 1 Esp. Rep. 240. In the present case the cargo was not delivered, nor even entered at the custom house. They remained quasi in custodia legis; and in such a situation that a legal transfer could not be effected of them. 2 Esp. Rep. 516. Abb. 238. Davenport cannot be considered in the light of a middle man, like a wharfinger, or the mutual agent of both parties* 2 Bos. and Pul. 460. But if he could be so considered, yet this would not operate any transfer, because the possession of the owner would remáin. 3 Bos. and Pul. 320. Lex Merc, Amer, 164. 7 D. and E. 440. The possession of the owner in this case existed at the time ofthe attachment served. If a bill of lading be indorsed, the consignee, or agent, has possession. 12 Mo. 166. The agent respeciing the goods, must sue in the name of the principal. 4 East. 156. The agent has only a qualified right of possession. The owner’s possession still continues ; and by attachment, the creditor gains all the right that the absent debtor had at the time.The attachment act does not prescribe the manner of serving attachments ; but it declares, that seizing part in the name of alb makes all the debtors’ goods liable. The service of a copy writ ia no seizure of the goods. The question is, when a lien by attach, ment is effected, as between creditors, or a priority obtained. Cer--tainly, by the use of diligence, in suing out process, and not by the service of process, which does not depend on the creditor, but on the sheriff. There is an analogy in this respect, between a writ of attachment and a- writ of fi. fa. The sheriff should have no dis. cretionary power to give an undue preference. The property was in the hands and power of the captain of the vessel, and was,; therefore, liable to be attached.
Prin&le, E contra. Davenport had an unquestionable right to amend his return, and shape it according to the truth of the case, after the legal effect of what was done prior to the attachment was explained to him. The first return was erroneous, but net through1 *505 design. He intended nothing unfair in making either return. The second return states the facts of the case, and leaves the legal effect of them to be determined by the court. After he had communicated with the defendants, at the port of delivery, and after seeing the shipper’s letter to them, he consented to deliver the vessel and cargo to them, and conform to their direction. Broadfoot went on board, and gave orders where to haul in, and took actual possession. It was such a possession as the nature of the case admitted of. After this, the captain became their servant, and had no right to do any thing about the property which they did not authorize. He was bound to be subservient to their orders, while he continued as master on board that vessel. The captain got clothing for the negroes on the credit of defendants, upon the strength of the delivery to them of the vessel. This was equal to marking bales of goods, or to a tenant attorning. The captain became sub-agent. He delivered a list of the slaves to the defendants. This was equivalent to the indorsement of a bill of lading. It was a fact indicative of actual delivery of a part for the whole of the cargo, and ought to be considered as efféctual to transfer possession, as the delivery of a key of a trunk, or warehouse. The vessel was, at the time, the depository of the goods, quasi a warehouse. The letter from Davidson to' defendants, authorizing them to pay themselves out of the proceeds, created a trust after the agency was accepted.' They had a lien on the property, independent of the attachment. They had an authority, coupled with an interest. After going on board, Broadfoot advertised the negroes for sale, by consent of the captain. This was exercising the right of possession, and ownership; and furnishes evidence to show that the captain had, to all intents and purposes, placed the ship and cargo in the power, and under the direction and control, of the defend, ants.
The doctrine on the subject of stoppage in transitu, does not apply in this case. That doctrine is of equitable origin. 1 Ath. 245. It is applicable only in cases where the owner, or consignor, is likely to suffer, — where the consigned property has never got into the actual power, or possession, of the consignee, so as to give his other creditors a right to claim it as his, in case of his failure. In such case, the'owner, or consignor, is in equal equity with the other creditors, as to his debt due for the goods ; and as the goods have never reached the debtor, it allows him to reclaim them, if he can, before delivery, and so discharge the debt. But if the goods be delivered on board a ship chartered by the consignee, it is con *506 s^ere<^ a delivery into possession, and the consignor cannot reclairt.t them. 7 D. and E. 442. 1 East. 522. Abbot, 303.
The attachment act of 1744, P. L. 187, declares, that property, *n hands, power, or possession, belonging to the absent debtor, or any third person, or garnishee, shall be liable to attachment; and such garnishee, duly summoned, is bound to discover what things he has in his possession, or power, belonging to the defendants. The captain in this case, had possession, as the agent, or servant, of the defendants ; but he had no power to dispose of the property, or even to keep it in possession longer than the defendants chose. He, therefore, could have no lien upon the property, further than was created by the nature of his employment. His power being subordinate to, and under the control of the defendants, the service, or lodgment of an attachment, could not operate to deprive them of any right they would have been entitled to, in case they had been actually on board themselves, and had immedi. ate possession of the vessel. But the true construction of the act is, that any one, who has the direction, care, and ordering of property, though not in the direct occupation, or having the immediate possession or use of property, is within the intent of the act. Such person may, by the due exercise of his power, render the property forthcoming, to answer the creditors demand ; and as he cannot attach in his own hands, he ought to be allowed to retain, or have a priority in regard to his own debt. “ Hands, power, or possession,” are the words used in the act, and are used as words of synonymous import. The intent of the legislature must be sought for ex visceribus actus, and by collating the act with others made in pari materia. Possession, therefore, in such case as this, must be construed in relation to the subject matter, secundum sub-jectam materiam; and ought to be taken to mean, at any rate, a possession taliter qualiter ; such a possession as consists with the nature of the thing, and the circumstances of the case.
The clear expressions of the act authorize tbe construction, that the property can only be bound by attachment, from the service of the writ; monies, and debts, are to be attached, as well as goods and chattels. Goods may be seized or levied on ; but money and debts are attachable, by serving a copy. The rights of the owner cannot be affected without notice; nor can a priority be otherwise gained, but by service of the writ. The lien created by an execution, is not analagous. It is the judgment which gives the lien. This lien has been restrained by statute, as to personal property, to the lodgment of the writ. As to the argument, that 'a *507 sheriff should have no power to give a preference, the same would apply equally to executions. If the sheriff gives an undue preference, he will be liable.
The decision was in favor of the defendant.
[The above case, it will be seen, is not fully reported, as it wants the decision of the Appeal Court, which, it is evident, from an inspection of the manuscript, Judge Brbvakd intended to have given ; but as he has not done so, the report, as far as it goes, may still be acceptable to the bar.]